Robert J. CONNAGHAN, J.H. Lindsay, A.G. Andrikopoulos, and Richard L. Goodman, Plaintiffs–Appellants,

v.

MAXUS EXPLORATION COMPANY, Defendant–Appellee.

No. 92–8016.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1993.

James A. Clark (Fred M. Winner, Peter J. Korneffel, Jr. with him on the briefs) of Baker & Hostetler, Denver, CO, for plaintiffs-appellants Connaghan, Lindsay, Andrikopoulos and Goodman.

J. David Arkell of Clanahan, Tanner, Downing & Knowlton, P.C., Denver, CO, and (Stephen H. Kline of Kline & Jenkins, Chey-

enne, WY, with him on the briefs), for defendant-appellee Maxus.

Before ANDERSON, Circuit Judge, RONEY, Senior Circuit Judge,* and TACHA, Circuit Judge.

PER CURIAM:

Plaintiffs Robert J. Connaghan, J.H. Lindsay, A.J. Andrikopoulos, and Richard L. Goodman ("the Andrikopoulos Group"), appeal from a district court judgment excusing defendant Maxus Exploration Company ("Maxus"), the operator under an oil and gas Operating Agreement, from liability for settling, without the Andrikopoulos Group's prior consent, litigation concerning an oil well in which all the parties had an interest. We hold, contrary to the district court, that Maxus' actions constituted a breach of contract. Nevertheless, we affirm the judgment for defendants on the ground that the Andrikopoulos Group has suffered no damages because the only losses they claim are the result of a settlement that the district court properly found reasonable.

Maxus was the operator of the oil well, and the Andrikopoulos Group and others held working and revenue interests. The Andrikopoulos Group constituted one-third of the working-interest owners.

Both Maxus and the Andrikopoulos Group were co-defendants in a diversity action brought by William D. Gibbs, et al. ("Gibbs"), for trespass and to quiet title to the oil well. That underlying litigation involved a controversy over the location of the well. Maxus, the Andrikopoulos Group, and the other defendants asserted that under an 1882 survey the well was located in Section 21 of a township in Campbell County, Wyoming. Gibbs claimed that under a 1986 resurvey the well was located in Section 22. The minerals under Section 21 were owned by the United States. The minerals under Section 22 were owned by Gibbs. The defendants had produced oil, gas, and hydrocarbons from the well and had paid royalties to the United States and distributed proceeds among themselves. Gibbs requested a determination that the well was in Section 22 and an award of $6.7 million in damages for oil and gas that the defendants had obtained from drilling the well.

The Operating Agreement provided in Paragraph 28 that "[t]he defense of lawsuits shall be under the general direction of a committee of lawyers representing the parties, with [Maxus'] attorney as Chairman. Suits may be settled during litigation only with the joint consent of all parties."

During discovery in the underlying lawsuit, all defendants except the Andrikopoulos Group accepted the fact that the well was in Section 22 and thus had been erroneously located. The United States stipulated that the well was in Section 22 and agreed to refund the royalties it had received, approximately $628,308. Maxus proposed that the case be settled, and all defendants except for the Andrikopoulos Group agreed. Maxus settled the litigation for $1,210,100 without the Andrikopoulos Group's consent, believing that their refusal to settle was unreasonable.

After the settlement, the Andrikopoulos Group asserted claims against Maxus in the case before this Court. The case went to trial on four issues: breach of contract, location of the well, breach of fiduciary duty, and the Andrikopoulos Group's claim for an accounting. Wyoming substantive law applied. The district court found that a preponderance of the evidence showed that the well was indeed in Section 22. The court said that there was no fiduciary duty under the Operating Agreement, that the Andrikopoulos Group had breached the Operating Agreement by unreasonably refusing to settle, and that this prior material breach excused Maxus from liability for settling without the unanimous consent required by the Operating Agreement. As an alternative ground for decision, the court denied the Andrikopoulos Group's claim for an accounting and found that it had suffered no damages because the original defendants would have lost at trial. The Andrikopoulos Group appealed.

---

* Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

The Andrikopoulos Group claims that the district court erred in finding Maxus not liable for breach of contract or breach of fiduciary duty, and that Maxus should have been estopped from asserting, and the district court precluded from deciding, that the well was in Section 22.

They are correct in claiming that Maxus' actions constituted a breach of contract. It is undisputed that Maxus settled the underlying litigation without the unanimous consent of the parties, in contravention of the express language in the Operating Agreement. The district court found that Maxus' conduct was excused by the Andrikopoulos Group's unreasonable refusal to settle, which constituted a prior material breach by violating the implied covenant of good faith and fair dealing inherent in the Operating Agreement. Whether or not unreasonable refusal to settle could constitute a breach of contract, the conclusion that the Andrikopoulos Group acted unreasonably is not supported by the record. The evidence showed that Maxus did not tell the Andrikopoulos Group the terms of the settlement when it asked for the Andrikopoulos Group's consent. It was not unreasonable to refuse a settlement when the details were not disclosed. Even the Maxus vice-president, who made the decision to settle, testified at trial that he would not have advised his own company to consent without more information. Thus, the Andrikopoulos Group's refusal to settle could not be held to be unreasonable.

The district court, however, in addition to finding that Maxus was not liable, made specific findings that the Andrikopoulos Group suffered no actual damage. These findings are not clearly erroneous. The record supports the district court's finding that, had the underlying action proceeded to trial, a preponderance of the evidence would have shown that the plaintiffs would have prevailed and received a judgment for more than the amount of the settlement. Thus, the Andrikopoulos Group cannot show damage as a result of the settlement. There is, therefore, no reversible error in the district court's judgment for Maxus.

The district court correctly found that the Operating Agreement did not impose any fiduciary duty on Maxus, the terms of the agreement not expressly or impliedly giving rise to one. *Andrau v. Michigan Wisconsin Pipe Line Co.,* 712 P.2d 372, 376 (Wyo.1986).

The Andrikopoulos Group argues that Maxus should have been estopped from asserting at trial that the well was in Section 22 because the underlying suit, in which plaintiffs had alleged this location, was dismissed with prejudice. Issue preclusion does not result from a dismissal with prejudice unaccompanied by findings when, as in this case, subsequent litigation involves a different cause of action. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955).

Nor was the district court precluded from deciding the well's location just because it was not included as an issue in the pretrial order. Testimony on the issue was received at trial and was necessary to resolve the case. Both parties knew that the well's location was a central issue in the litigation, so there was no unfair surprise, particularly in light of the fact that the Andrikopoulos Group initiated the testimony on this issue. The district court did not abuse its discretion in making a determination as to the location of the oil well. *Case v. Abrams,* 352 F.2d 193, 195–96 (10th Cir.1965).

**AFFIRMED.**